H & M REALTY COMPANY *v.*
UNION MECHLING CORPORATION,
Ray GARDNER and CARDINAL CARRIERS, INC.

CA 79-187                                          595 S.W. 2d 232
Court of Appeals of Arkansas
Opinion delivered February 6, 1980
Review denied March 3, 1980
Released for publication March 17, 1980

*House, Holmes & Jewell,* for appellant.

*Laser, Sharp, Haley, Young & Huckabay,* for appellees.

DAVID NEWBERN, Judge. The appellant asks us to find the trial court erred in refusing to admit certain testimony offered as rebuttal evidence and in refusing to permit the evidence to be reopened, after both sides had rested but

before the case was argued, for the purpose of clearing up some confusion and rebutting the testimony of one of the appellees' witnesses. Because we find we should reverse on the latter point, we decline the appellant's invitation to render an exhaustive discussion as to the proper definition of "rebuttal evidence." It is not inevitable or even likely that the question will arise if this case is retried.

On September 6, 1975, a tow boat, the Arkansas Traveler, and some appended barges owned and operated by the appellees, tied up on the bank of the Arkansas River in the vicinity of a marine railway dry docking ramp owned and operated by the appellant. The appellant alleged that in the process of bringing the boat and the barges to the bank, the appellees' operators caused the railway ramp to be struck and damaged. The appellant's evidence tended to show damage had been done on or about September 6 to the rails and concrete structure of the ramp which was used to remove large vessels from the river.

During the trial, an issue developed as to the amount of the load being borne by the barges which were being towed by the Arkansas Traveler. An eyewitness to the docking, who was presented in the appellant's case in chief, said some of the barges were low in the water, indicating they were heavily laden. Appellee Ray Gardner, who was the captain of the boat, testified there was a very light load, and when questioned on cross examination during the appellee's case in chief he said the barges carried "ten hundred ton" that day. The issue as to the weight of the barges could have had a crucial bearing on the result of the case apparently with respect to whether an impact could have been of sufficient force to have caused the damage and whether the hull of any barge could have been sufficiently submerged to have caused the injury of which the appellant complained.

After the appellees rested their case, the appellant sought to introduce the testimony of James R. Tollett, a U.S. Army Corps of Engineers official, whose proffered testimony was that lock records for September 6 showed a total cargo weight of two thousand tons for the barges with the Arkansas Traveler and that that was the only commercial traffic which

passed through the lock on the day in question. The following discussion occurred in the judge's chambers:

> THE COURT: Let the record reflect that the defendant had completed their case and the plaintiff proposes to call witness, Tollett.

> MR. HARGIS [counsel for plaintiff-appellant]: Yes, sir, from the Corps of Engineers, who has records which indicate that there were two thousand tons of cargo, excluding the weight of the barges, in his tow on that date and that is different from the testimony which was given in the disposition earlier and which is the basis for his being called as a rebuttal witness initially, however, the witness now has acknowledged that he had ten thousand tons of weight which he was pushing down river and Mr. Tollett has an additional point which is that the Arkansas Traveler was the only boat on September 6, 1975, which went through Lock and Dam No. 5 and Lock and Dam No. 7, which shows that it was the only object on the water that day which is clearly rebuttal, which could have done the damage to the concrete slab, which our expert witness would say was necessary in order to bust the concrete slab.

> THE COURT: Let me see if I am understanding you correctly. The problem of the amount of cargo is not in issue anymore. The only thing that you propose to elicit from this witness is that this boat, the Arkansas Traveler, was the only, I believe you said, commercial vehicle or vessel on the water on this particular day. I'm going to hold that that is not rebuttal, it could have been presented in your case in chief, there's been no testimony that there was or was not other vessels of that character on the water. It is not rebutting anything that has been, on which there has been any evidence given.

. . .

It is apparent that both the appellant's lawyer and the judge were under the false impression that Gardner had said "ten thousand" rather than "ten hundred." Because of this

confusion, the judge did not see any reason to consider whether the testimony of Tollett as to the cargo weight would have been proper rebuttal to the figure used by Gardner. The point was thus not decided at that juncture of the trial.

After the appellant rested its case in rebuttal, and apparently after realizing the confusion which had existed earlier, the appellant moved to reopen the evidence to permit Tollett's testimony to be placed before the jury. Appellant's counsel argued in support of the motion with emphasis upon assuring the judge understood the significance he attached to the discrepancy between Gardner's and Tollett's testimony on the cargo weight.

We do not know whether the motion to reopen was denied because the judge considered the testimony as being outside the scope of rebuttal evidence or because it came after both parties had rested their cases and at a time when a trial judge may grant or refuse such a motion within his discretion, and he saw no need to reopen under these circumstances.

This particular testimony about the cargo weight does not pose a difficult question as to the scope of proper rebuttal as might have some of the problems we have found no need to consider in this case. The appellees' witness presented the first definite figure on the cargo weight, *i.e.*, "ten hundred ton." Tollett's testimony, "two thousand tons," was in direct rebuttal of this asserted subordinate evidentiary fact. See, VI Wigmore, *Evidence*, § 1873, p. 672 (3d Ed. 1976). No new issue would have been raised by this proffered testimony, and it would not have resulted in an unwarranted surprise to the appellees. The question of the condition of the barges in the water had been addressed by the appellant's witness in its case in chief, but the appellees' witness was the first to discuss the specific weight of the cargo. No doubt the court could, and we think should, within its discretion, have permitted this rebuttal evidence. For general discussions of the question of proper rebuttal evidence and the authority of the court to exercise its discretion, see *Baker* v. *City of Little Rock,* 247 Ark. 518, 446 S.W. 2d 253 (1969); *Casey* v. *W. & A. Lumber Co.,* 142 Ark. 584, 219 S.W. 12 (1920); and *Bain* v. *Fort Smith Light & Traction Co.,* 116 Ark. 125, 172 S.W. 843 (1915).

The only remaining question is whether the court should have permitted the proffered evidence to go to the jury despite the fact that both parties had rested. Here again, the court has the discretionary power to refuse to reopen the evidence after the parties have rested. *National Life Insurance Co.* v. *Alexander,* 193 Ark. 185, 98 S.W. 2d 316 (1936).

We find no Arkansas cases involving jury proceedings where it has been held that there was an abuse of discretion in failure to reopen evidence to clear up possible confusion, although we find a chancery case which can be cited for the point that failure through inadvertence to place before the trier of fact important evidence is a basis for reopening the evidence, and that refusal to permit it to be reopened under such circumstances will result in reversal. *Bobo, et al* v. *First National Bank of Hope,* 244 Ark. 448, 425 S.W. 2d 521 (1968). The principle involved is that evidence should be reopened where to do so would serve the interests of justice and cause no undue disruption of the proceedings or unfairness to the party not seeking to have it reopened. *Cooke Trust Co.* v. *Edwards, et al,* 43 Haw. 226 (1959); *Akins* v. *Taylor, et al,* 314 So. 2d 13 (Fla. App. 1975); *Engelberg* v. *Putter,* 146 N.Y.S. 2d 291 (1955).

Many of the cases in which a trial court has been held to have exceeded its discretionary authority, including the *Akins* and *Cooke Trust Co.* cases cited above, involve inadvertent failures to produce evidence without which the court is forced to direct a verdict against the party whose inadvertence caused the lapse. The *Engelberg* case, *supra,* is a very brief *per curiam* opinion, but it is apparent the court there dealt with a defendant's motion to reopen evidence to admit a document which would have been directly contradictory to one of the plaintiff's witnesses. Thus, the court was not concerned with defining "rebuttal" evidence or with the order of trial in that sense. But the principle announced there was, "[i]n the interest of justice, in an appropriate case, an application to reopen a trial for the purpose of taking additional pertinent testimony . . . should be granted," and based on that statement a judgment was reversed and a new trial ordered. No directed verdict was involved in that case.

A case analogous to the one before us is *Narens* v. *St Louis Public Service Co.,* 238 S.W. 2d 37 (Mo. App., 1951). After the parties had rested, in that case, counsel for the defendant discovered testimony in a deposition the plaintiff had offered had been improperly transcribed, and a streetcar operator's statement thus appeared to be that he could stop his vehicle in "5 or 6 feet" rather than "50 or 60 feet" under certain conditions. Had it been properly transcribed, his testimony would have been "50 or 60 feet." The defendant's counsel asked that the evidence be reopened and stated that he could produce the reporter who took the deposition, and that the reporter would state the witness had said "50 or 60 feet" rather than "5 or 6 feet." The request was refused, and the appellate court reversed with the following statement we find applicable here:

> From a reading of the record, it appears quite probable that counsel for defendant first became aware of the very obvious difference between the statement of the operator and the expert witness regarding the distance in which the streetcar could be stopped, after the expert had testified. It was probably then that he discovered the error that he desired to prove. There is nothing to suggest that to have allowed such evidence to have been introduced would have worked any unfair hardship on the plaintiff. The court, therefore, in the exercise of sound discretion should have allowed the case to be reopened and it erred in refusing the defendant's request. [238 S.W. 2d at 42]

In that case, there was the additional factor that opposing counsel took full advantage of the mistake in arguing the case to the jury. We have no indication of that in the case before us, nor do we have any clear indication the jury was confused as were appellant's counsel and the judge by the unusual terminology used by the appellee's witness." What we do have, however, is a case where the appellant, because of inadvertence or confusion, was denied an opportunity to present proper rebuttal evidence which might have been important in the jurors' resolution of the case. The granting of the motion would not have been unduly prejudicial to the appellees, and it would have barely, if at all, inconvenienced

the court to have permitted the air to have been cleared and this evidence admitted.

Reversed and remanded for new trial.

HAYS AND PILKINTON, JJ., dissent.

JAMES H. PILKINTON, Judge, dissenting. I would affirm this case. As I view the record, the mistake, misunderstanding or error, if any, was on the part of appellant's attorney and not on the part of the trial court. Trial judges are not always privy to the tactics, or choices of evidence, adopted by lawyers practicing before them in a contested case.

I agree with the majority that the cargo weight, and the testimony of witness Tollett, would have been proper rebuttal testimony if it had been timely offered. Here the record reflects that the defendants had completed their case and the plaintiff discussed calling Mr. Tollett. At this point, counsel for the plaintiff advised the court that the amount of cargo "Is not in issue anymore". The trial judge was under no obligation to inject himself into this decision, made by the trial counsel for appellant, even if the lawyer was under the false impression as to what Mr. Gardner, a prior witness for defendants, had said regarding the weight of the cargo. In fact, it seems to me that it would have been improper for the judge to have done so at this juncture. It would perhaps have amounted to "assisting" the appellant in trying its case. The judge was not called upon at that juncture of the trial to pass on whether or not this evidence was proper rebuttal because appellant's counsel withdrew the issue at that time.

The majority speculates that the appellant later realized its mistake and moved to reopen the record to permit Tollett's testimony to be placed before the jury. However, by this time both sides had rested, and the court had already instructed the jury. I do not believe that this motion to reopen was timely filed. To say the least, the granting or denial of the motion to reopen was a matter within the discretion of the trial judge. Under the circumstances, I cannot say that the trial court abused its discretion in denying the motion. Most trial attorneys in retrospect can always see things that they

wish they had done differently during the trial; and, which they would approach in another manner if given a second chance. However, I do not believe that we should reverse a case because the lawyer misunderstands some of the testimony or fails to follow the evidence during the trial.

I also do not think the trial judge was under any obligation to monitor the evidence presented by one of the parties for the purpose of being certain that such party did not misunderstand some of the testimony; or, to be sure that one of the parties presented the strongest case possible; or, that an attorney for one of the litigants did or did not make a mistake in choosing to contest, or not to contest, a certain fact question in issue. To do so, I believe, would inject the trial judge improperly into the presentation of evidence. It would confuse the role of the judge with that of trial counsel.

If the weight of the cargo, and the fact that appellee had the only barge on the river that day, were as important to appellant's case as it now claims, why was this evidence not offered by appellant as a part of its case in chief? As plaintiff below, appellant had the burden of proving its case. Witness Tollett was available, or could have been available to appellant at any time during the trial. Appellant did not attempt to call him until after both sides had rested, and the judge had instructed the jury.

I do not believe the trial judge exceeded his discretionary authority. Therefore, I respectfully dissent. I am authorized to state that Hays, J., joins in this dissent.