Joanne AYRES, et al.,
Plaintiffs-Appellants,

v.

SEARS, ROEBUCK & COMPANY, et
al., Defendants-Appellees.

No. 84-1966.

United States Court of Appeals,
Fifth Circuit.

May 19, 1986.

Ray Guy, Dallas, Tex., Vic Terry, Garland, Tex., Kirk B. Purcell, Houston, Tex., for plaintiffs-appellants.

Timothy E. Kelley, John W. Henvey, Dallas, Tex., for defendants-appellees.

Before GARZA, POLITZ, and HILL, Circuit Judges.

POLITZ, Circuit Judge:

In this diversity jurisdiction, Texas products liability case involving a television set which was allegedly defective and the cause of a fire, the district court directed a verdict for the defendants at the close of plaintiffs' case-in-chief. Finding evidence of such quality and weight as to require submission of this case to the jury, we reverse and remand.

## FACTUAL BACKGROUND

An August 1979 fire at the home of Joanne Ayres resulted in the death of her 74-year-old mother, Tomoko Ishibashi, and damaged her home and its contents. Joanne Ayres, individually and as administratrix of her mother's estate, her husband James, two siblings and, ultimately, her minor nephew, Takashi Namiki, filed suit for damages, invoking the Texas strict products liability provision and the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA), Tex.Bus. & Comm. Code §§ 17.41–.63.

Plaintiffs allege that the fire originated in a television set Joanne Ayres purchased from Sears, Roebuck & Company three and one-half years prior to the fire. Co-defendant Thomas International Corporation, the predecessor of defendant Warwick Electronics Incorporated, is a division of Whirlpool Corporation which allegedly marketed the set purchased by Ayres.

At the close of the plaintiffs' case-in-chief, the trial court granted defendants' motion for directed verdict under Fed.R. Civ.P. 50(a), expressing the opinion that the evidence presented, including the testimony of a seven-year-old eyewitness, a fire captain, and two expert witnesses, "was insufficient under Texas law to establish the existence of a defect when read in light of the Boeing Company against Shipman standard." The court went on to note that the mere fact of an accident was "insufficient as a matter of law to make a *prima facie* case for breach of implied warranty of fitness for a particular use." The claim for damages under the DTPA was rejected because counsel failed to ask Joanne Ayres where the set had been purchased. We disagree with the grant of a directed verdict. The essential inquiry is not whether the evidence established an actionable defect within the strict liability rubrics, an issue upon which we express no opinion, but whether the evidence fairly posed one of more jury questions. We are persuaded that it does.

## SKETCH OF EVIDENCE

That there was a serious fire in the Ayres home, damaging the home and its contents and causing the death of Mrs. Ayres's mother is not contested. Plaintiffs contend that the fire started in the television set in the den and then spread to the house. Defendants counter that the fire may have originated below the television set and been drawn into the set by the chimney effect of a vent-hole in the bottom of the television housing. That issue is obviously contested.

Included in plaintiffs' evidence was the testimony of a captain of the responding fire department who stated that the burn pattern in the den was a "V" with the point located at the television set. Also included was the testimony of young Takashi Namiki who was watching the television when sparks appeared at its rear. In addition, plaintiffs offered the testimony of two expert witnesses who expressed the opinion that the set was defective and was the probable cause of the tragic fire. Since verdict was directed at the close of plaintiffs' evidence, the only countervailing evidence was that produced by cross-examination of plaintiffs' witnesses.

## STANDARD OF REVIEW

The applicable standard of review in this case, for both the trial and appellate court, was set forth in *Boeing Company v. Ship-*

*man*, 411 F.2d 365 (5th Cir.1969) (*en banc*). In accordance with *Boeing*, "considering all of the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, [we must determine whether] there is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 176 (5th Cir.1985). *See also Tubbs v. Campbell*, 731 F.2d 1214 (5th Cir.1984). A jury question is presented if there is such evidence.

█ In making this determination we apply federal standards of review to assess "the sufficiency or the insufficiency of the evidence in relation to the verdict," *Fairley v. American Hoist & Derrick Co.*, 640 F.2d 679, 681 (5th Cir.1981), but in doing so in a diversity case, we refer to state law for "the kind of evidence that must be produced to support a verdict," *McCandless v. Beech Aircraft Corp.*, 779 F.2d 220, 223 (5th Cir.1985).

## ANALYSIS

█ Nearly two decades ago, the Texas Supreme Court adopted *Restatement (2d) of Torts* § 402A as its law governing products liability. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967). This regime imposes strict liability on one who manufactures or distributes a product which proves to be defective. A plaintiff must establish that the defendant manufactured or marketed a defective product, that the defect rendered the product unreasonably dangerous for intended or reasonably foreseeable use, and that the defect caused the injury. *Restatement (2d) of Torts* § 402A; *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979); *Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974).

Proof of the defect and of the causative element may be established by direct or circumstantial evidence based on anecdotal or expert testimony. *Kindred v. Con-Chem, Inc.*, 650 S.W.2d 61 (Tex.1983); *Jack Roach Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262 (Tex.1967); *General Motors v.*

*Grizzele*, 642 S.W.2d 837 (Tex.Civ.App.—Waco 1982, *writ dism'd w.o.j.*); *Thiele v. Chick*, 631 S.W.2d 526 (Tex.Civ.App.—Houston 1982, *writ ref'd n.r.e.*); *Travenol Labs. v. Bandy Labs.*, 608 S.W.2d 308 (Tex.Civ.App.—Waco 1980, *writ ref'd n.r.e.*); *see also Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985); *Franks v. National Dairy Prods. Corp.*, 414 F.2d 682 (5th Cir.1969).

As the district court correctly noted, the mere fact that an accident happened, standing alone, does not establish that a product was actionably defective. *See, e.g., Simien v. S.S. Kresge Co.*, 566 F.2d 551 (5th Cir. 1978); *Fort Worth Steel & Mach. Co. v. Norsworthy*, 570 S.W.2d 132 (Tex.Civ.App.—Tyler 1978, *writ dism'd w.o.j.*). But the plaintiff need not establish the specific feature which made the product defective. *V. Mueller & Co. v. Corley*, 570 S.W.2d 140 (Tex.Civ.App.—Houston 1978, *writ ref'd n.r.e.*); *Franks, supra.* And, as noted, proof of defect, as well as the causation link, may be established by direct or circumstantial evidence and be the product of anecdotal or expert-opinion testimony.

The causative factor is denominated "producing cause" by the Texas courts. In its benchmark case of *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 351 n. 3 (Tex.1977), authored by then-Justice Reavley, now a judge of this court, the Texas Supreme Court endorsed the trial court's definition of producing cause as "an efficient, exciting or contributory cause, which, in a natural and continuous sequence, caused in whole or in part the ... injuries ..., and but for said cause the ... injuries would not have occurred. There can be more than one producing cause...."

The plaintiff is required to establish that the defect existed when the manufacturer or marketer relinquished control of the product, *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Pittsburg Coca-Cola Bottling Works v. Ponder*, 443 S.W.2d 546 (Tex. 1969), but that element is also provable by direct or circumstantial evidence, based on fact or opinion testimony, *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex.1969). As

might be expected, there is a characteristic intertwining of the proof of the defect, its existence when the defendant relinquished control, and the producing cause. Although imprecise, the lines are sufficiently definite and are fit grist for the mill of the trier-of-fact, in this instance the jury. *See Bell Helicopter v. Bradshaw*, 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, *writ ref'd n.r.e.*).

Although proof of a feasible, safer alternative design is the most traveled avenue to proving the existence of a design defect, *Mitchell v. Fruehauf Corp.*, 568 F.2d 1139 (5th Cir.1978); *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867 (Tex.1978), negation of possible causes other than a defective product may suffice. *Franks v. National Dairy Prods. Corp.* In addition, the Texas Supreme Court has declared that "[i]f the plaintiff has no evidence of a specific defect in the design or manufacture of the product, he may offer evidence of its malfunction as circumstantial proof of the product's defect." *General Motors v. Hopkins*, 548 S.W.2d at 349–50. *See also Kindred v. Con-Chem*, 650 S.W.2d at 63, in which the Texas Supreme Court found that the opinion of an expert, in light of circumstantial evidence, "was more than a scintilla because it furnished a reasonable basis for differing conclusions concerning the existence of a ... defect."

Applying the governing Texas rules to the evidence offered by the plaintiffs, we conclude that a directed verdict for the defendants should not have been granted. The fire captain focused on the television set as the probable incendiary source. The young plaintiff spoke of the sparks and fire emanating from the television. One of the plaintiffs' expert witnesses, George Teer, a consulting mechanical engineer, opined that the television set was the only possible source of the fire. The second expert, John Stewart, an electrical engineer with extensive experience investigating the causes of fires, was of the opinion that the fire began inside the set and that "components on the underside of the main chassis of the television ... failed and caused the ignition...." Stewart also expressed the

opinion that the television could readily have been made safer, assigning reasons for this belief.

We are persuaded that the plaintiffs offered sufficient evidence to go to the jury on whether the television set was originally defective, and whether that defect was a producing cause of the injuries and losses. In that regard we note that James Ayres, himself a television repairman, testified that neither he nor any other person had ever invaded the integrity of the unit, that it had never been opened for repairs or any other reason, and that on the day of the fire it was the same as on the day first received.

We conclude that the foregoing constitutes substantial evidence obviating the appropriateness of a directed verdict. We find marked similarities between the instant case and our intervening decision in *Shipp v. General Motors*, which also involved Texas products liability law. We therein found substantial evidence creating a jury issue in an auto crashworthiness case. The rationale, and many of the authorities relied upon by the *Shipp* court, are here instructive and applicable.

 Having concluded that the directed verdict must be vacated in all respects and the matter remanded for new trial, we need not address the DTPA issue except to note for future guidance that, considering all of the circumstances, the trial court abused its discretion in declining to allow plaintiffs to reopen the evidence to ask the sole question about the place of purchase. That did not appear to be a contested issue; the place of purchase was the subject of written interrogatories and was declared in the opening statement, but counsel inadvertently overlooked asking the question before concluding the case-in-chief. *See generally Capital Marine Supply Inc. v. M/V Roland Thomas II*, 719 F.2d 104 (5th Cir. 1983); *Hall v. Aetna Cas. & Sur. Co.*, 617 F.2d 1108 (5th Cir.1980); *H & M Realty Co. v. Union Mechling Corp.*, 595 S.W.2d 232 (Ark.Ct.App.1980); 6A *Moore's Federal Practice* ¶ 59.04[13] (2d ed. 1983).

The final question posed by this appeal is the contention by appellees that the appeal of Takashi Namiki was abandoned because the notice of appeal was given by "Joanne Ayres, et al., Plaintiffs above named ... from the Final Judgment entered in this action on the 8th day of November, 1984." Namiki was not "above named." We find no merit in this contention.

Fed.R.App.P. 3(c) provides that "a notice of appeal shall specify the party or parties taking the appeal." Three of our sister circuits require strict compliance, rejecting an embracive designation such as "et al." *See, e.g., Farley Transp. Co. v. Sante Fe Trail Transp. Co.,* 778 F.2d 1365 (9th Cir. 1985); *Life Time Doors, Inc. v. Walled Lake Door Co.,* 505 F.2d 1165 (6th Cir. 1974); *Covington v. Allsbrook,* 636 F.2d 63 (4th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1990, 68 L.Ed.2d 305 (1981).

We have joined other circuits in a less strict application of the rule, permitting, in limited instances, appeals by parties not named in the notice of appeal. *See, e.g., Harrison v. United States,* 715 F.2d 1311 (8th Cir.1983); *Williams v. Frey,* 551 F.2d 932 (3d Cir.1977); *Brubaker v. Board of Education,* 502 F.2d 973 (7th Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); *Parrish v. Board of Commissioners,* 505 F.2d 12 (5th Cir.1974), *opinion withdrawn on other grounds,* 509 F.2d 540, *reh'g en banc,* 524 F.2d 98 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976), *appeal after remand,* 533 F.2d 942 (5th Cir.1976); *G.E. Smith & Assoc. v. Otis Elevator Co.,* 608 F.2d 126 (5th Cir.1979) *(citing Parrish ).*

Those circuits giving a broader application to Rule 3(c) have done so when satisfied that there was no surprise, detrimental reliance, or prejudice to appellees because one or more parties had not been listed by name in the notice of appeal. Typically, the cases involved an identity of issues in the appeals of the named and unnamed appellants.

In the case at bar we perceive no basis for surprise, detrimental reliance, or prejudice to appellees because of the use of "et al." in the notice of appeal. A review of this record reflects that throughout the course of this litigation, all parties utilized this oft-used legal abbreviation when referring to the plaintiffs. All plaintiffs were considered covered by the "et al." designation as used in all earlier filings. We conclude that the same applies to the notice of appeal.

For these reasons, we REVERSE the directed verdict and REMAND for new trial on all issues.