SUGARLOAF DEVELOPMENT CO., INC. *v.* HEBER
SPRINGS SEWER IMPROVEMENT DISTRICT, et al.

CA 90-229                                        805 S.W.2d 88

Court of Appeals of Arkansas
Division I
Opinion delivered March 6, 1991

*Lightle, Beebe, Raney, Bell & Hudgins*, by: *Donald P. Raney*, for appellant.

*Reed, Irwin & Tilley*, by: *Leon Reed and R. Bryan Tilley*, for appellee.

JUDITH ROGERS, Judge. The appellant, Sugarloaf Development Co., Inc. [hereinafter "Sugarloaf"], appeals from an adverse decision in the Cleburne County Chancery Court in an action in which it sought a reduction in its sewer betterment assessment. On appeal, Sugarloaf contends that the chancellor erred in finding that no material physical change had occurred on

the property so as to warrant a reduction in its assessed value, and that the chancellor erred in denying its motion for a new trial. We find merit in both issues raised, and reverse and remand.

In August of 1973, Sugarloaf platted for development a forty-nine acre tract of land into eighty-one lots. The subdivision, located in Heber Springs, Arkansas, was named Cedarglades No. 2 [hereinafter "Cedarglades"], and was to be developed for residential purposes. Sometime in the late 1970's or early 1980's, the appellee sewer improvement district was formed, and after litigation, the property was assessed in 1985 in the amount of $184,183. Since its inception, only two lots have been sold in the subdivision and on December 23, 1986, Sugarloaf obtained an order from the county court reverting the property from lots and blocks to raw agricultural acreage. In the subsequent years, no reassessment was made by the district, and Sugarloaf filed this lawsuit against the district and its commissioners after receiving no response from the district to communications requesting a reduction in its assessment. In its complaint, filed on July 21, 1989, Sugarloaf contended that its betterment assessment for Cedarglades was presently excessive in light of the reversion to acreage, and asked that it be reduced. In his letter opinion of January 2, 1990, the chancellor agreed with Sugarloaf that the assessment was excessive, but denied relief partially on a finding that there had been no physical change in the property. As its first issue, Sugarloaf contests this finding made by the chancellor.

On appeal from a chancery court case, the appellate court considers the evidence *de novo*, and it will not reverse unless it is shown that the lower court's decision is clearly contrary to a preponderance of the evidence. *Kerby* v. *Kerby*, 31 Ark. App. 260, 792 S.W.2d 364 (1990). A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Duckworth* v. *Poland*, 30 Ark. App. 281, 785 S.W.2d 472 (1990).

We agree with the chancellor that an assessment cannot be revised unless there is a material physical change in the property. This requirement is not statutory, but is found in the applicable case law. In *Street Improvement District No. 74* v. *Goslee*, 183 Ark. 539, 36 S.W.2d 960 (1931), the supreme court held that assessments cannot be increased or diminished except

for some physical change in the property since the original assessment. *See also Paving District No. 2 of Harrison* v. *Johnson*, 186 Ark. 1033, 57 S.W.2d 558 (1933). We disagree, however, with the chancellor's application of this law to the facts of this case.

Carl Foust, president of Sugarloaf, testified that the company was formed to develop Cedarglades and other real estate. With regard to this subdivision, he said that initially roads were cut on the property, and that sewer lines had been constructed by the district on the western and eastern boundaries, leaving the central portion unserved. Mr. Foust testified, however, that the development had not been successful, citing the inability to sell but two of the eighty-one lots, despite heavy advertising, and the expense of development. He said that the property remained unimproved, as the roads were never paved, nor were utilities ever run into the subdivision. He also said that the subdivision was reverted to acreage, excepting the two lots that were sold and one road, due to the failure of the project and that Sugarloaf had been attempting to sell the property in two or three tracts, or as a whole. He stated that Sugarloaf's annual assessment was $6,078.04 and that he had twice written the district asking for a reduction in the overall assessment since the reversion, and that he had received no response. He acknowledged that the property had derived some benefit from the placement of the sewer lines, but stated that the property was still being assessed as a subdivision, which no longer exists. Finally, Mr. Foust related that the ad valorem taxes on the property had been decreased by fifty percent.

Warren Christopher, a local realtor, testified that he and his company had a listing at one time to sell the property. Mr. Christopher described the land as being unimproved, and "rough" and "rocky." He related that of the two lots sold, one had a house situated on it with no services except city water. He said the difficulty in selling lots in the subdivision was due to the absence of streets and utilities. Noting what he deemed the "prohibitive" costs required to make this an ongoing subdivision, he said that they were unable to find a purchaser to develop the property. He said that the property ranged in value from $67,000 to $75,000.

Sugarloaf also presented the testimony of Ray Owen, Jr.,

who said that he had worked with thirty to thirty-five improvement districts both as an assessor and an attorney. He testified that a betterment assessment is arrived at by taking the difference of the before and after value of the property with the improvement. He related that numerous factors are considered in assessing the benefit accruing to property including the proximity to the sewer, the size and use of the land, topography, accessibility to public highways and whether there are improvements on the land. He said that generally it was normal for assessments to increase with development and growth or in the case of a split-off, just as it would decrease if an improvement were destroyed, such as if a house burned. He explained that annual assessments would pick up on these changes in property, and that he believed that the reversion of a subdivision to agricultural acreage was a factor that would be considered, and should work to lower the betterment assessment. As examples, Owen explained that a tract of land platted into lots was treated differently upon assessment than a tract without lots. He said that when property is subdivided, each lot is assessed separately, increasing the assessment from that which it was as a whole. When a portion of a tract is sold, called a split-off, he said that the total assessed benefits for the two tracts would be greater than it was as a single tract.

Mr. Owen further stated he was "surprised" at the current assessment, amounting to $3,760 an acre, as compared to similar property in the area. He testified that, for instance, the Wolford tract, which is adjacent to Cedarglades and consists of sixty-one acres, is valued at $84,498 by the county tax assessor with an assessed benefit of $22,000, or $369 an acre; the Stark tract, which is twenty acres and includes a residence, is valued at $75,420, the betterment assessment being $12,772 or $639 an acre; the twelve and a half acre Ogelsby tract, also including a residence, is valued at $96,105 and is assessed $11,713, for $938 an acre; and the Kelly tract, twenty acres, is valued at $27,500 with an assessment of $10,000, or $500 an acre. Owen placed the value of the land at $67,348 based on the county tax assessor's figure, and opined that it was worth $82,000 with the improvement, yielding an assessment of $14,642.

Through its witnesses, the district maintained that it was without authority to reduce the assessment as no physical change had occurred. In this regard, the district asserted that the

reversion was a change on paper only, and that the property, as far as physical outlay, was in the same condition as when the assessment was originally made.[1]

Under Ark. Code Ann. § 14-90-602 (1987), assessments may be revised by an improvement district on an annual basis, either increasing or diminishing the assessment against particular pieces of property as justice may require.[2] We think the record supports the chancellor's view that the assessment here is currently excessive, but we also believe that the evidence reflects a material physical change in the property which would allow a reduction in the assessment.

■ Assessments are founded upon the special benefit conferred upon property by the improvement, and an assessment cannot be sustained if the amount is in excess of the benefits in the enhancement of the value of the property received by the owner from the improvement. *See Kelley Trust Co.* v. *Paving District No. 46 of Fort Smith*, 184 Ark. 408, 43 S.W.2d 71 (1931). In this case, the property was subdivided based on the intent that development would occur, and the original assessment was premised on the higher value of a subdivision, rather than acreage. However, in the past sixteen years only two lots have been sold, and the property remains unimproved with no real prospect for development. Due to the reversion to acreage, the subdivision no longer exists in its original form, thus materially changing the character of the property. If, as revealed by the testimony, assessments increase with growth and development, we fail to see why the converse would not apply when anticipated improvements never come to fruition. Under the particular circumstances of this case, we are persuaded that the reversion to

---

[1] Although the district argues that Ark. Code Ann. § 14-90-602 (1987) speaks in permissive terms, in that it may but is not required to revise assessments, we note that the district cannot insulate itself from inaction, as an excessive assessment results in a prohibited taking of property without just compensation. *See Kelley Trust Co.* v. *Paving Improvement District No. 47 of Fort Smith*, 185 Ark. 397, 47 S.W.2d 569 (1932).

[2] Arkansas Code Annotated § 14-86-602 (1987) provides that where any improvement district shall have issued bonds or incurred indebtedness, the total amount of the assessed benefits shall never be reduced upon reassessment. There was evidence that the total amount of assessments for the district beginning in 1985 was $4,297,985 which had increased to $4,616,364 in 1989, leaving a difference of $318,399.

acreage, as affecting the value of the land and the benefits accruing to it, constitutes a material physical change. We hold then that the chancellor's finding to the contrary is clearly erroneous, yet we do note that the chancellor was clearly disturbed by this ruling since he had also found that the assessment exceeded the benefit to the property.

Sugarloaf next argues that the chancellor erred in denying its motion for a new trial. In this lawsuit, Sugarloaf was proceeding under Ark. Code Ann. § 14-90-604(a)(2) (1987), which provides:

> If on the hearing it appears that all outstanding bonds, interest coupons, and other indebtedness of the district have been fully paid, *or that to facilitate the liquidation of the district all of its bonds, coupons and other indebtedness have been acquired and are held by a trustee or by the commissioners of the district exclusively in trust for the property owners of the district*, and if it further appears that the assessment is excessive and should be reduced, it shall be the duty of the court to reduce the assessment as equity and good conscience may require, taking into consideration the market value of the property involved, the benefits accruing to the property by reason of the improvement, the assessments against similar property in the district, the amount of other taxes and assessments against the property in other districts in which the land may be, and any other pertinent facts.

(Emphasis ours.) In his letter opinion, the chancellor concluded that in any event he was without authority to reduce the assessment based on testimony at trial that there was an outstanding bond indebtedness. Appellant filed a motion for a new trial, pointing to the disjunctive phrase emphasized above, and asking that the record be reopened for the taking of testimony on this issue. The trial court denied the motion. In oral argument, counsel for Sugarloaf conceded that evidence on this issue had inadvertently been omitted at trial, but urges that "in equity and good conscience" the chancellor should have allowed the reopening of the record for proof on this question. We agree.

The instant case is not unlike that of *Bobo* v. *First Nat'l Bank of Hope*, 244 Ark. 448, 425 S.W.2d 521 (1968). There, the

supreme court reversed the chancellor's finding of a fraudulent conveyance because the record contained no evidence that the transferor and transferee of the property were related in order to support the presumption of fraud. The court, however, also reversed on cross-appeal the chancellor's denial of the appellee's request to reopen the record for the introduction of testimony showing them to be mother and son.

■■ A trial court has the discretionary authority to reopen the record for the presentation of important evidence which, through inadvertence, was not placed before the trier of fact. *See H & M Realty Co. v. Union Mechling Corp.*, 268 Ark. 592, 595 S.W.2d 232 (1980). The principle involved is that evidence should be reopened where to do so would serve the interests of justice and cause no undue disruption of the proceedings or unfairness to the party not seeking to have it reopened. *Id.* As observed by the supreme court in *Midwest Lime Co. v. Independence County Chancery Court*, 261 Ark. 695, 551 S.W.2d 537 (1977):

> However, a chancellor has the power to allow defects in proof to be supplied at any time. Such action is in his discretion and is not subject to review here except where his action is arbitrary, and the rights of some of the parties are improperly affected. When, in the judgment of the chancellor, the ends of justice will be served, this Court has said that it is his plain duty to allow further proof to come in.

*Id.* at 706, 551 S.W.2d at 542 (quoting *Bradford v. Eutaw Savings Bank of Baltimore*, 186 Md. 127, 46 A.2d 284 (1946) (citations omitted). Both below and on appeal, the parties have assumed that evidence on this point is necessary to appellant's request for relief. Under the circumstances, we believe the chancellor abused his discretion in not reopening the record for the presentation of proof on this issue.

Reversed and remanded.

DANIELSON and MAYFIELD, JJ., agree.