

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-12-923

| | |
|---|---|
| ACEVA TECHNOLOGIES, LLC, AND SUNGARD AVANTGARD, LLC<br>APPELLANTS | **Opinion Delivered** September 18, 2013<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 2007-1677-2] |
| V. | HONORABLE KIM M. SMITH, JUDGE |
| TYSON FOODS, INC.<br>APPELLEE | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL |

## JOHN MAUZY PITTMAN, Judge

Aceva Technologies, LLC, and Sungard Avantgard, LLC (collectively "Aceva"), bring an appeal from a jury verdict in the Washington County Circuit Court in favor of appellee, Tyson Foods, Inc. Aceva challenges several of the trial court's rulings, and Tyson brings a cross-appeal from its refusal to award prejudgment interest. We affirm on the direct appeal and reverse and remand on the cross-appeal.

In 2004, the parties entered into a Value Assessment Agreement (VAA), in which Aceva agreed to evaluate Tyson's credit department's processes and software needs for $30,000. Aceva advised Tyson that it would save about $2,000,000 by implementing Aceva's software. Following that recommendation, Tyson purchased Aceva's software and entered into a Software License Agreement (SLA) in February 2005, whereby Tyson paid Aceva a licensing fee of $400,000 and a first-year maintenance fee of $80,000. Tyson also agreed to

SLIP OPINION

pay approximately $170,000 for Aceva to customize and install the software in accordance with Tyson's needs. Aceva agreed to complete the work in twelve weeks, beginning in March 2005. The SLA contained the following limitation-of-liability clause:

> a) *Limitation*: EXCEPT AS PROVIDED FOR IN THIS AGREEMENT, ACEVA'S AGGREGATE LIABILITY TO CUSTOMER IN ANY WAY RELATED TO THIS AGREEMENT, AND REGARDLESS OF WHETHER THE CLAIM FOR SUCH DAMAGES IS BASED IN CONTRACT, TORT, STRICT LIABILITY, OR OTHERWISE, WILL NOT EXCEED THE LICENSE FEES RECEIVED BY ACEVA FROM CUSTOMER FOR THE AFFECTED SOFTWARE FOR THE 12 MONTH PERIOD PRECEDING THE OCCURRENCE OF SUCH LIABILITY.

> b) *No Consequential Damages*. EXCEPT AS PROVIDED FOR IN THIS AGREEMENT NEITHER PARTY WILL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES.

Aceva did not meet the twelve-week deadline. During the next year, Aceva billed Tyson almost $900,000 for license and maintenance fees and services; according to Tyson, the software never met its requirements and could not be used. Tyson notified Aceva of breach on April 11, 2006, and demanded cure by May 12, 2006; in the alternative, it demanded reimbursement for its out-of-pocket costs of $887,199.60. Aceva did not satisfy those demands.

Tyson sued Aceva in 2007, asserting breach of the VAA, the agreement to provide professional services, the SLA, express warranty, and implied warranties, and the implied covenant of good faith and fair dealing in the VAA and SLA; negligence in performing the VAA and professional services; promissory estoppel; unjust enrichment; negligent misrepresentation; deceptive trade practices; and fraud. Tyson notified Aceva that, pursuant to paragraph 10(f) of the SLA, the governing law would be that of Delaware. Aceva asserted

various affirmative defenses, including Tyson's material breach; it also contended that the VAA and SLA had merged and that there was only one contract between the parties (the SLA). Aceva also brought a counterclaim against Tyson for breach of contract, promissory estoppel, and unjust enrichment.

Aceva moved for partial summary judgment to enforce the limitation–of–liability provision of the SLA. It also filed a motion in limine, asking the court to permit it to produce evidence of that provision and to preclude Tyson from introducing any evidence of damages in excess of $400,000. Aceva asked the court to instruct the jury that the limitation–of–liability clause applied to all of Tyson's claims (except the fraud claims, if they survived). In response, Tyson argued that all remedies under the Uniform Commercial Code were available if it could prove that the limited remedy failed of its essential purpose, and that whether a limited remedy failed of its essential purpose is a question of fact for the jury.[1] It also argued that the VAA was a separate agreement, which contained no limitation–of–liability clause, and was not merged into the SLA.

The circuit court partially granted Aceva's motions in limine and for partial summary judgment, leaving the "failure-of-essential-purpose" question for the jury. The court stated that if that provision did not fail of its essential purpose, it applied to the SLA-related claims

---

[1]Delaware's version of section 2-719 of the UCC, like the comparable statute in Arkansas, provides that a seller's right to limit remedies in a UCC contract to "repair or replacement" or "return and refund" is subject to subsection (2) where circumstances cause an exclusive or limited remedy to "fail of its essential purpose"; if it fails, the UCC's remedies are available and the buyer may disregard that term of the contract. Del. Code Ann. Tit. 6, § 2-719 (2013).



(including negligence) but not to the VAA. The court dismissed several claims, leaving those for breach of the VAA, the SLA, and express warranty; negligence in performance of professional services; promissory estoppel; unjust enrichment; deceptive trade practices; and fraud for trial.

The case was tried before a jury. Tyson nonsuited its claim for breach of the VAA. During its case-in-chief, Tyson called witnesses who testified about Aceva's failure to perform adequately, using documentary evidence consisting of computer screen shots, emails, and software-generated reports. The court denied Aceva's motions for directed verdict based on the limitation-of-liability clause. Over Tyson's objection, the trial court permitted Aceva to present the testimony of Harit Nanavati, a software engineer with Aceva during the relevant time frame, who performed a live demonstration of the software using a computer server provided by Aceva. Tyson argued that it needed an opportunity to first inspect the computer server used by Nanavati in the demonstration to verify whether he was using the same software that Tyson had on its server. Aceva assured the trial court that the software was the same version that Tyson had, and the trial court permitted Nanavati to demonstrate that the software worked at that time. Tyson asked for a recess to inspect the software before conducting its cross-examination of Nanavati. The trial court denied Tyson's request for a recess. Nevertheless, after Nanavati had testified, during the presentation of the remainder of Aceva's case-in-chief, the circuit court allowed Tyson to inspect the computer. Kevin McManus, a management consultant, testified that the software worked properly.

Michael Mader, an IT employee of Tyson, testified on rebuttal that, based on his limited inspection of the Aceva server and software, there were significant differences between those files and the software files on Tyson's server. He stated that, although he could not identify the precise changes, "digital fingerprints" indicated that the software used by Aceva during the demonstration was an altered version of the Aceva software that had been installed on Tyson's servers. Mader testified that he set up a computer so that Regina Villines, Tyson's next witness on rebuttal, could remotely access Tyson's server and enable her to demonstrate the actual software that had been installed on Tyson's server. Villines then demonstrated the problems with the version of the Aceva software running on Tyson's system. During Aceva's cross-examination of Villines, it asked for a recess to permit McManus to inspect the version of the Aceva software installed on Tyson's server before Aceva finished asking questions of Villines. After the trial court denied this motion for a recess during Villines's testimony, Aceva decided not to ask her any further questions and stated that it had no further rebuttal witnesses. At that time, the testimony was completed.

About fifteen minutes later, Aceva asked to present McManus as a surrebuttal witness so that he could testify that the software on Tyson's server had an expired business calendar. The trial court denied this request and Aceva proffered McManus's testimony. In his proffered testimony, McManus acknowledged that months before trial, Aceva had been given a copy of the software on Tyson's server and that it had been given an opportunity to log onto Tyson's server to further review the software, but had declined because he saw no need

SLIP OPINION

to do so. McManus acknowledged that he had been aware of the business-calendar issue before trial.

The jury found that Aceva had breached the SLA, causing Tyson damages; that Aceva had not breached an express warranty to Tyson; that Aceva was negligent in performing the VAA, causing Tyson damages; that Aceva had not committed deceit; that Aceva had not violated the Arkansas Deceptive Trade Practices Act; that Tyson had not breached the SLA; and that the limitation-of-liability remedy in the SLA had failed of its essential purpose. The jury awarded damages of $512,000 to Tyson and no damages to Aceva. Tyson moved for prejudgment interest, attorney's fees, and costs. The circuit court entered judgment on the jury verdict and awarded attorney's fees of $300,000 to Tyson, plus $100,000 in costs. The court denied Tyson's request for prejudgment interest. Aceva then pursued this appeal and Tyson filed a cross-appeal from the order denying its motion for prejudgment interest.

In its first point on appeal, Aceva argues that the trial court abused its discretion in refusing to call a recess so that it could inspect Tyson's computer and software that was shown to the jury during rebuttal on the last day of trial. Aceva further asserts that after the record was closed, it discovered that Tyson had "rigged the software to fail by mis-configuring the business calendar setting," and that when it sought to reopen the record to introduce this newly-discovered evidence, the circuit court refused to do so.[2] Aceva argues that it had no choice but to rest its case after the circuit court refused to give it any time in a recess to

_____

[2] We address whether the court abused its discretion in refusing to reopen the record in the next point.



inspect the computer and software on the laptop computer that Villines had shown the jury while accessing the Aceva software running on Tyson's servers through a wireless internet connection.

Trial courts have considerable discretion in the control and management of proceedings at trial. *Walcott & Steele, Inc. v. Carpenter*, 246 Ark. 95, 436 S.W.2d 820 (1969); *Coca Cola Bottling Co. v. Jordan*, 186 Ark. 1006, 54 S.W.2d 403 (1932). The trial court has an affirmative obligation to administer the docket efficiently. *Odaware v. Robertson Aerial-AG, Inc.*, 13 Ark. App. 285, 683 S.W.2d 624 (1985). We cannot say that the trial court abused its discretion in denying Aceva's request for a recess because the jury had already heard nine days of testimony and Aceva had presented its lengthy case-in-chief, during which its witnesses had testified (with a demonstration) that the software did work and that the only problems were caused by Tyson. Because it is not at all apparent that a short recess to permit Aceva to prepare a witness for surrebuttal would have changed the outcome of the trial, we affirm on this point.

In its second point, Aceva argues that the circuit court erred in refusing to reopen the record to permit it to introduce evidence concerning Tyson's computer and software that was shown to the jury. Aceva argues that McManus had his first opportunity to inspect the laptop and software that Tyson had shown to the jury after the record was closed; at that time, he discovered that the software had appeared to malfunction when Tyson showed it to the jury only because Tyson had erroneously set the software's business calendar function (for the wrong year). According to Aceva, the court abused its discretion in refusing to

SLIP OPINION

reopen the record to admit McManus's testimony and correct the misimpression that Tyson had left with the jury.

Whether to reopen the record was within the trial court's discretion, in light of all of the relevant circumstances. *Sugarloaf Development Co., Inc. v. Heber Springs Sewer Improvement District*, 34 Ark. App. 28, 805 S.W.2d 88 (1991). Evidence should be reopened where to do so would serve the interests of justice and cause no undue disruption of the proceedings or unfairness to the party not seeking to have it reopened. *Id.* The general rule is that we will not reverse the trial court's decision to admit or refuse evidence in the absence of an abuse of that discretion and a showing of prejudice. *Mason v. Mason*, 319 Ark. 722, 895 S.W.2d 513 (1995); *Acker Construction, LLC v. Tran*, 2012 Ark. App. 214, 396 S.W.3d 279; *Simpson v. Braden*, 2011 Ark. App. 250. The factors to be considered have been explained in *Trial Handbook for Arkansas Lawyers*:

> A court should not reopen a case except for good reason and on proper showing. The exigencies of each particular case have much weight in controlling the discretion of the court. Factors taken into consideration in allowing a party to reopen a case to introduce new evidence include:
>
> 1. Failure to introduce evidence occurred because of inadvertence, calculated risk, or the court's mistake. 75 Am. Jur. 2d *Trial* § 382.
>
> 2. Surprise or unfair prejudice inuring to the opponent by the new evidence. 75 Am. Jur. 2d *Trial* § 382.
>
> 3. Failure to prove a basic element of a crime; e.g., value of property stolen or age of the defendant or victim. *Bland v. State,* 251 Ark. 23, 470 S.W.2d 592 (1971) (value); *George v. State,* 306 Ark. 360, 813 S.W.2d 792 (1991), opinion supplemented on denial of reh'g, 306 Ark. 360, 818 S.W.2d 951 (1991) (age of defendant).

4. Diligence of the party seeking introduction of the new evidence. 75 Am. Jur. 2d *Trial* § 382.

5. Admissibility, relevance, and lack of cumulativeness of new evidence to the proponent's case. *Walker v. State,* 240 Ark. 441, 399 S.W.2d 672 (1966).

6. Time or stage of the proceedings at which the motion is made. 75 Am. Jur. 2d *Trial* §§ 386 to 394.

7. Time and effort expended upon the trial. 75 Am. Jur. 2d *Trial* § 382.

8. Effect reopening the proof will have on completing the trial, considering the opponent's right to respond to it. 75 Am. Jur. 2d *Trial* § 382.

9. Any cogent reasons which justify denying the request. 75 Am. Jur. 2d *Trial* § 382.

Greater liberty should be allowed in the matter of reopening the proof when the case is tried to the court without a jury. *Midwest Lime Co. v. Independence County Chancery Court*, 261 Ark. 695, 551 S.W.2d 537 (1977).

John Wesley Hall, Jr., *Trial Handbook for Arkansas Lawyers* § 86:5 (2006).

We cannot say that the trial court abused its discretion in refusing to reopen the record for Aceva to present the surrebuttal testimony of McManus. During nine days of testimony, the jury had heard both parties' versions of what had gone wrong with the software and had seen two computer demonstrations. Aceva had previously declined the opportunity to log onto Tyson's server, and its expert witness was aware of the business-calendar issue before trial. If Aceva had chosen to do so, McManus could have testified about this matter during Aceva's case-in-chief. We affirm on this issue.

In its third point, Aceva argues that the circuit court erred as a matter of law in failing to enforce the limitation-of-liability clause and in permitting the jury to decide whether it failed of its essential purpose. Because we hold that the SLA did not supersede or encompass

9

SLIP OPINION

the VAA, addressed below, we need not decide the limitation-of-liability issue. The jury rendered a general verdict for damages after finding that Aceva was negligent in performing the VAA and that it breached the SLA. Because the verdict was general, there is no way to ascertain the allocation of damages as to negligence and breach of contract. Where the jury verdict is rendered on a general-verdict form, it is an indivisible entity or, in other words, a finding upon the whole case. *Bradshaw v. Alpha Packaging, Inc.*, 2010 Ark. App. 659, 379 S.W.3d 536. We will not speculate on what the jury found where special interrogatories on damages are not requested and a general jury verdict is used. *Hyden v. Highcouch, Inc.*, 353 Ark. 609, 110 S.W.3d 760 (2003). We affirm on this point.

In its fourth point, Aceva argues that the circuit court erred in refusing to enforce the limitation-of-liability clause against Tyson's claim for negligent performance of the VAA. Aceva asserts that Tyson's allegations relating to negligent performance of the VAA directly relate to the SLA and, therefore, come within the limitation-of-liability clause's broad terms. Under this point, Aceva also argues that the SLA superseded the VAA because of the integration clause found at paragraph 10(g) of the SLA. That clause stated: "This agreement constitutes the entire agreement and supersedes any prior or contemporaneous oral or written agreements regarding the subject matter . . . ."

The trial court did not err in its construction of the SLA as not encompassing the VAA, which Aceva had already performed. A merger clause in a contract, which extinguishes all prior and contemporaneous negotiations, understandings, and verbal agreements, is simply an affirmation of the parol-evidence rule. *Simpson, supra*. The parol-evidence rule is a rule

10



of substantive law in which all antecedent proposals and negotiations are merged into the written contract and cannot be added to or varied by parol evidence. *Id.* It is a general proposition of the common law that, in the absence of fraud, accident, or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings, and verbal agreements on the same subject. *Id.* Merger is largely a matter of intention of the parties; in fact, intention is a prerequisite for merger and the trial court will use a "totality-of-the-circumstances" approach to determine the parties' intention. *Id.* Although whether the subsequent writing included a merger or integration clause is important to the question of intention, it is not determinative; the court will look to all of the other circumstances evidencing the parties' intent before deciding whether merger applies. *Id.* Merger only happens, however, when the same parties to an earlier agreement later enter into a written integrated agreement covering the *same* subject. *Id.* The cases cited by Aceva do not support its argument that under Delaware law, the SLA's integration clause superseded the VAA.

Tyson contended that the VAA and SLA did not cover the same subject, and the trial court agreed, as do we, because the VAA and SLA were completely separate contracts dealing with different subject matters. Under the VAA, Aceva gave Tyson professional advice for a separate consideration. Pursuant to the SLA, it sold licensed software and related services to Tyson. The agreements were executed months apart and were not part of the same transaction. The parties entered into the VAA in April of 2004 for Aceva to perform an independent study of Tyson's credit department's systems and software needs in exchange for



$30,000. Aceva performed this analysis and recommended that Tyson choose its software. Tyson then followed that recommendation and entered into the SLA with Aceva in February 2005. We affirm on this point.

In its last point, Aceva argues that, even if we affirm on the other issues, we should hold that the circuit court erred in awarding Tyson $100,000 in costs under the SLA's indemnification clause found in Section 7(c),[3] which provided:

> Indemnification: Aceva shall indemnify, defend, and hold harmless Customer, its affiliates, directors, officers, employees and agents from and against any all suits, claims, demands, losses, damages, costs and expenses of any nature whatever, including without limitation, litigation expenses, attorney's fees and liabilities, incurred in connection therewith, arising out of: (a) injury to, or death of, any person whatsoever or damage to property of any kind by whomever owned, proximately caused in whole or in part by the acts or omissions of Aceva, any of its members, employees, agents or other persons directly or indirectly employed by or associated with Aceva; or (b) any breach by Aceva of a representation, warranty or covenant contained herein or in any Schedule.

Aceva contends that it is not obligated to reimburse Tyson for its costs expended in suing Aceva, but is only required to indemnify Tyson if it is sued by a third party. The scope of the indemnity clause is a matter of contract interpretation, which is governed by Delaware law. If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent. *City Investing Company Liquidating Trust v. Continental Casualty Co.*, 624 A.2d 1191 (Del. 1993). When there is uncertainty in the meaning and application of the terms of the contract, the appellate and trial courts will consider testimony pertaining to antecedent agreements,

---

[3] Aceva does not challenge the reasonableness of the award.

communications, and other factors which bear on the proper interpretation of the contract. *Pellaton v. Bank of New York,* 592 A.2d 473 (Del. 1991). In that situation, the language used by the parties is subject to different meanings and is, thus, ambiguous, or more precisely, not reflective of the parties' shared intent. *City Investing, supra.* The agreement's language is not, however, rendered ambiguous simply because the parties in litigation differ concerning its meaning. *Id.; see also Mahani v. Edix Media Group, Inc.*, 935 A.2d 242 (Del. 2007).

Aceva cites *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160 (Del. 1978), in support of its assertion that the Delaware Supreme Court has held that an indemnification clause nearly identical to that set forth in the SLA was limited to third–party claims and did not cover costs related to litigation between the parties. We disagree. The indemnity clause in *Cannon* was significantly different from the one in this case. It provided:

> SUBCONTRACTOR (Cannon) shall hold CONTRACTOR (Dorr–Oliver) and Owner (Barcroft) harmless from any and all claims, liabilities and causes of action for injury to or death of any person, and for damages to or destruction of any property, resulting from any and all acts or omissions of SUBCONTRACTOR, its agents, employees and subcontractors, in connection with the performance of the Work, and shall defend any such claim asserted or brought against CONTRACTOR or Owner, provided, however, the CONTRACTOR and Owner shall have the right, without relieving SUBCONTRACTOR of any obligations hereunder, to participate in the defense of such suit if CONTRACTOR or Owner so elects.

*Id.* at n.2. The *Cannon* court found that the indemnity clause was of a kind "commonly found in construction contracts" that were "intended to protect the general contractor (and owner) from suits brought by third parties who are injured by acts of the subcontractor." *Id.* at 1165. The *Cannon* indemnity clause, is therefore, easily distinguished from the provision in this case, which stated that Aceva would indemnify Tyson "from . . . all . . . losses . . .

damages, costs and expenses . . . arising out of . . . a breach by Aceva of a representation, warranty or covenant contained herein . . . ." This provision unambiguously included the litigation costs of this lawsuit. We affirm on this point.

On cross-appeal, Tyson argues that the trial court erred in denying it an award of prejudgment interest because the damages were capable of ascertainment at the time of the loss. Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of loss until judgment. *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 389 S.W.3d 77. It is allowable where the amount of damage is definitely ascertainable by mathematical computation or if the evidence furnishes data that makes it possible to compute the amount of damages without reliance on opinion or discretion. *Id.* If a method exists for fixing an exact value on the cause of action at the time of the occurrence of the event that gives rise to the cause of action, prejudgment interest should be allowed, because one who has the use of another's money should be justly required to pay interest from the time it lawfully should have been paid. *Id.* However, where conflict exists over the validity of the damages sought by the plaintiff and the fact-finder is required to use its discretion to determine the amount of damages, prejudgment interest should not be awarded. *Id.* It is always dependent upon the initial measure of damages being determinable immediately after the loss and with reasonable certainty. *Baptist Memorial Hospital – Forrest City, Inc. v. Neblett,* 2012 Ark. App. 191, 393 S.W.3d 573. In *Arkansas Law of Damages*, the author explains:

> Unlike the requirement for statutory penalty interest in the insurance statute, the controlling factor for pre-judgment interest is not whether the plaintiff recovers a particular amount. If a sum certain is sought and a lesser amount awarded, pre-judgment interest is still appropriate. In *Brown v. Summerlin Associates, Inc.*, [272 Ark.



298, 614 S.W.2d 227 (1981),] a surveyor claimed over $16,000 for the value of his services, but the court awarded only $11,000 on a quantum meruit basis. Pre-judgment interest was appropriate, although the opinion does not clarify whether the interest was from the time the bill was submitted. It is unclear how the damages were "ascertainable as to amount and time." If the case satisfies the test by having "the initial measure of damages" known, most cases certainly will. The court determined that at some prior point, the defendant knew how much was to be paid and when it was to be paid. Thus, pre-judgment interest was appropriate.

Howard W. Brill, *Arkansas Law of Damages* § 10:3, at 142 (5th ed. 2004). An award of prejudgment interest is a question of law, to be decided by the court. *Spann*, *supra*. The appellate court gives no deference to conclusions of law, which it reviews de novo. *Id*.

Tyson states that the date of breach was May 12, 2006, when Aceva failed to comply with the thirty-day deadline for curing the breach and that at that time, Tyson's out-of-pocket expenses, of which it demanded a refund, were undisputed. They included (1) $30,000 paid to Aceva for the VAA; (2) the $400,000 license fee Tyson paid to Aceva pursuant to the SLA; (3) $162,000 that Tyson paid to Aceva for two years' maintenance fees; and (4) $314,000 that Tyson paid to Aceva for professional services. In its notice demanding that Aceva cure the breach by May 12, 2006, Tyson sought its total out-of-pocket payments to Aceva ($887,199.60). According to Tyson, the amount awarded by the jury (which was less than its total out-of-pocket expenses) was equal to the sum of the $30,000 VAA fee, the $400,000 license fee, and one year of maintenance fees, $82,000. We agree with Tyson that it is irrelevant that the damages were contested and that the amount of loss was ascertainable on May 12, 2006. The trial court, therefore, erred in denying Tyson's motion for prejudgment interest.

SLIP OPINION

Affirmed on direct appeal; reversed and remanded on cross-appeal.

WYNNE and GRUBER, JJ., agree.

*Wright, Lindsey & Jennings, LLP*, by: *Gary D. Marts, Jr.*; and
*Blank Rome, LLP*, by: *Daniel E. Rhynhart* and *Inez R. McGowan*, pro hac vice, for appellants.

*Reece Moore Pendergraft, LLP*, by: *Timothy C. Hutchinson*; and
*Brown & James, P.C.*, by: *Steven H. Schwartz*, pro hac vice, for appellee.