MAUMELLE BOULEVARD WATER AND SEWER
DISTRICT NO. 1 of North Little Rock, Arkansas, Joined by
Its Commissioners, Keith Wingfield, Will Elder and
O. L. Holland *v.* Jeff DAVIS, Jr., and Cleo H. Davis

93-506                                      868 S.W.2d 73

Supreme Court of Arkansas
Opinion delivered December 20, 1993
[Rehearing denied January 24, 1994.*]

*Brown, J., not participating

*Simpson & Graham, P.A.*, by: *Gregory B. Graham* and *Lynda M. Johnson*, for appellants.

*Perry V. Whitmore*, for appellees.

ROBERT H. DUDLEY, Justice. Jeff Davis, Jr. and Cleo H. Davis, appellees, are the owners of 63.5 acres located on Maumelle Boulevard in North Little Rock. They held the land for development and sale as commercial and industrial sites, but needed water and sewer services before they could successfully market it. Consequently, appellees Jeff and Cleo Davis and other landowners formed appellant Maumelle Boulevard Water and Sewer District No. 1 of North Little Rock, a municipal improvement district, to provide sewer and water services to the property located

within the district. Appellee Jeff Davis, Jr. was the initial chairman of the district's commission. In 1988, the district published its assessment of benefits as required by statute, and those assessments were approved without objection. The district issued bonds, and the proceeds from the sale of these bonds were used to construct sewer and water lines within the district. A special improvement tax was imposed upon the assessments, and appellees paid, without protest, the first year's tax in early 1989.

After appellant district had assessed the benefits and the Davises had paid the first year's tax levy, the Davises were informed by the United States Army Corps of Engineers that substantial parts of their property were "wetlands" that were subject to regulation by the federal government. Pursuant to federal regulations, the Davises were not allowed to further develop the property unless they obtained a delineation of the extent of the wetlands and a use permit from the Corps. Since that time, the Davises have refused to pay their annual tax levies and have requested that their assessment be reduced because their property is in a wetlands area. Their request was rejected by appellant district and its current commissioners, appellants Keith Wingfield, Will Elder, and O.L. Holland, because the reduction would have caused the total assessed benefits of the district to fall below the original amount of assessments pledged as security for the bonds. The Davises brought this action in chancery court and asked to (1) have all assessments against their property declared void because of demonstrable error, (2) have a declaration that no taxes were due against the property, (3) have a refund of the 1988 taxes paid, (4) enjoin future assessments and taxes until the Corps of Engineers gives them a use permit, and (5) restrain appellant district from foreclosing on the property for past due taxes. Appellants answered, and appellant district counterclaimed to foreclose for delinquent taxes. The State First National Bank of Texarkana, as trustee of the bond issue, was only a nominal party. Upon trial, the chancellor granted to the Davises all the relief asked and denied the counterclaim for foreclosure. The district and the commissioners appeal. We hold that the chancellor erred in finding error in the assessment, in finding there was a material physical change in the lands, in finding an unconstitutional taking of the Davises property, and in dismissing the district's counterclaim. As a result, we reverse and remand for foreclosure proceedings.

## I.

Appellant district first argues that the chancellor erred in finding demonstrable error in the assessment of benefits and the levy of taxes. The argument is well taken.

■■ The assessment of benefits of a municipal improvement district can be attacked directly or, in limited circumstances, collaterally. A municipal improvement district is a creature of statute, and, as such, modifications in its assessments of benefits are governed by statute. In order to directly attack an assessment of benefits, a property owner must institute an action to correct or invalidate the assessment within thirty days of its publication. Ark. Code Ann. § 14-90-804(a) (1987); *see Davidson v. Sewer Improvement Dist.*, 182 Ark. 741, 32 S.W.2d 1062 (1930). If the property owner does not institute an action to correct the assessment within that time, "all objections to . . . the validity of the assessment shall be forever barred and precluded." Ark. Code Ann. § 14-90-804(b) (1987). It is undisputed that the Davises did not file a direct attack in this case within thirty days of the publication of the assessment. Accordingly, they are barred from directly attacking the assessment of benefits.

■■ An improvement district's assessment of benefits is subject to collateral attack, after the period for direct attack has run, in certain limited circumstances. *See Paving Dists. Nos. 2 & 3 v. Baker*, 171 Ark. 692, 694, 286 S.W. 945, 946 (1926). A collateral attack can prevail only in the event the property owner can show that there was fraud or demonstrable error in the original assessment of the benefits. *Carney v. Walbe*, 175 Ark. 746, 300 S.W. 413 (1927). The Davises did not allege fraud. Rather, they alleged demonstrable error, and the chancellor found that demonstrable error existed in this case. We have said that, after the expiration of the period for direct attack, a court can only set aside the assessment "when it appears on its face to be obviously and demonstrably erroneous." *Paving Dists. Nos. 2 & 3 v. Baker*, 171 Ark. 692, 694, 286 S.W.2d 945, 946 (1926) (citing *Board of Improvement v. Pollard*, 98 Ark. 543, 136 S.W. 957 (1911)). In *Portis v. Ballard*, 175 Ark. 834, 837, 1 S.W.2d 1, 2 (1927), we said:

"[D]emonstrable mistake" is such a mistake as can be

shown only on the face of the record of the proceedings creating the district or assessing the benefits. Extraneous testimony, such as that of engineers and others, tending to prove that certain portions of the territory embraced in the district could not and would not be benefitted by the improvements contemplated, is not relevant and competent on collateral attack.

The chancellor, over the district's objection, admitted substantial extraneous evidence about the "wetlands" that did not appear on the face of the proceedings creating the district or assessing the benefits, and this was the evidence used as the basis for finding demonstrable error. The error in the admission of the evidence is clearly shown in the chancellor's following finding of fact:

> The plaintiffs [Davises] and all involved in the improvement district did not know that at least much of the plaintiffs' land was "wetlands," not subject to development. Each of the parties made a mistake as to what use the land could be put. This mistake or demonstrable error lead to the mistaken assessment of benefits and improper levy of taxes on plaintiffs' property.

The chancellor candidly admitted that he chose not to follow the statutory and case law, but stated that it was his belief he was doing equity. Without question, the bondholders would argue that the chancellor was not doing equity as their bonds would lose value if the Davises and the other wetland owners were excused from paying the taxes that, in turn, pay the interest and retire the bonds. But equities as perceived by the chancellor are not the issue; the issue is whether the chancellor was bound to follow the applicable statutes and our cases construing those statutes. The answer is clear. It is well established that a court of equity must follow the law whenever the rights of the parties are clearly defined and established by the law. *Beebe Sch. Dist.* v. *National Supply Co.*, 280 Ark. 340, 344, 658 S.W.2d 372, 374 (1983). Consequently, the chancellor erred in going outside of the face of the record of the proceedings that created the district to find extraneous evidence of demonstrable error in the assessment of benefits on collateral attack.

## II.

The district and its commissioners next argue that the chancellor erred in finding a "material physical change" in the property. Again, the argument has merit. Under section 14-90-602 of the Arkansas Code Annotated of 1987, assessments may be revised by an improvement district on an annual basis, either by increasing or diminishing the assessment against a particular piece of property as justice may require. We have held that assessments cannot be increased or diminished except for some physical change that occurs in the property after the original assessment. *Street Improvement Dist. No. 74* v. *Goslee*, 183 Ark. 539, 36 S.W.2d 960 (1931). A material physical change is a basis upon which a property owner may obtain, by direct action, a reassessment of benefits *for future periods. See Sugarloaf Dev. Co., Inc.* v. *Heber Springs Improvement Dist.*, 34 Ark. App. 28, 805 S.W.2d 88 (1991); *Paving Dist. No. 2* v. *Johnson*, 186 Ark. 1033, 57 S.W.2d 558 (1933); *Benton* v. *Nowlin*, 187 Ark. 738, 62 S.W.2d 16 (1933); *Street Improvement Dist. No. 74* v. *Goslee*, 183 Ark. 539, 36 S.W.2d 960 (1931); *Missouri & N. Ark. Ry. Co.* v. *Little Red River Levee Dist.*, 172 Ark. 792, 290 S.W. 363 (1927). Here, the chancellor found that the Corps of Engineers' regulation concerning development of "wetlands" was a material physical change in the property, even though he also found the regulation was in effect before the original assessment of benefits. Even if the regulation were "material" and "physical," it was in effect before the original assessment and therefore was not a change that occurred after the original assessment. *See Johnson*, 186 Ark. at 1035, 57 S.W.2d at 559. Consequently, the ruling retroactively allowing relief for the taxes already paid was in error. In addition, one cannot recover taxes voluntarily paid. *City of Little Rock* v. *Cash*, 277 Ark. 494, 503, 644 S.W.2d 229, *cert. denied*, 462 U.S. 1111 (1982).

The chancellor also gave relief from paying future taxes because of the material physical change. We need not decide whether the chancellor was correct in ruling that the regulation caused the property to change materially and physically, but we note that our case law was developed in contemplation of actual physical changes that might occur after the initial assessment of benefits. For example, a tract with a large expen-

sive building might be assessed at a high figure, but if that building burned and was not rebuilt, the landowner would be entitled to a lower reassessment for future, but not past, taxes. But in this case, there was no change because the regulation was in effect before the assessment. In addition, even if there might have been a physical and material change, the chancellor's ruling diminished the total amount of benefits that were assessed, and "the total amount of benefits shall never be diminished if the district shall have borrowed money or incurred indebtedness." Ark. Code Ann. § 14-90-602(a) (1987). Since money had been borrowed, the chancellor erred in giving relief that diminished the total amount of benefits.

## III.

The chancellor also ruled that the assessment placed against the Davises' property exceeded its current value and therefore constituted an unconstitutional taking of property. The district contends the ruling was also in error, and, again, the argument has merit. The Davises mistakenly thought the land was more valuable than it was because they did not know the federal wetlands regulations applied to their land. The land did not have water or sewer lines, and the Davises helped form the improvement district as a method of getting water lines and sewers to their land. They thought the benefits to their land were fairly assessed, and as a result, they did not object to the valuation. The assessment is the basis for the levy of taxes which in turn pays for the construction of water lines and sewers. The district borrowed the money from bondholders to pay for building the improvements. The improvements were completed. The Davises then learned that the wetlands regulation applies to their land, but they are still required to pay their fair share of the taxes that in turn pay their share of the debt for the construction of the water lines and sewers to their property. The fact that they made a mistake in valuing their property and consequently in failing to object to that assessment does not make this a governmental taking. *See French* v. *Barber Asphalt Paving Co.*, 181 U.S. 324 (1901). The right of the property owner to make a direct attack on the assessment satisfies the Due Process requirements of the Constitution. *Portis* v. *Ballard*, 175 Ark. 834, 1 S.W.2d 1 (1927).

## IV.

The chancellor erred in voiding the assessment of benefits and levy of taxes by the district for the reasons set out above and, correspondingly, erred in dismissing the counterclaim of the district asking for foreclosure as a result of the Davises' failure to pay the annual assessments and for applicable statutory penalties and interest on delinquent assessments. While we prefer to decide all issues on the *de novo* review of chancery cases in order to terminate the litigation and prevent piecemeal litigation, we do remand chancery court cases when the record is not sufficient for us to determine some particular issue. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979). On the record in this case we cannot determine the amount of penalties and interest on delinquent assessments, and we remand for the chancery court to determine those issues and to order foreclosure if the taxes, penalty, and interest are not paid.

Reversed and remanded for proceedings consistent with this opinion.

BROWN, J., not participating.