The Honorable Mary Anne Salmon State Senator #29 Heritage Park Circle North Little Rock, AR 72116-8528
Dear Senator Salmon:
I am writing in response to your request for my opinion on the following questions concerning fire protection districts:
1. Sherwood (Arkansas) was incorporated as a town in April, 1948. Two years later in August, 1950, city officials wanted to establish fire protection for the citizens. Act 183 of 1939 (an Act making it possible for unincorporated areas to form a volunteer fire department) was used in establishing fire protection for all of the incorporated town. Act 183 specifically states that portions of towns may be included in the fire protection district.
 (a) Under these circumstances, was the organizing of fire protection for an incorporated town such as Sherwood legal?
 (b) What Arkansas law would have been applicable in organizing fire protection for an incorporated town at this time?
2. HB1441 that became Act 438 was introduced by Representative Jeff Wood in the 2005 Legislative session. This Act was passed on March 2, 2005. This Act did not have an emergency clause and became law ninety days (90) after the Legislative session ended (August 12, 2005). Act 438 made it possible for two fire protection districts located within one area to consolidate. County Judge "Buddy" Villines signed an Order on August 4, 2005 to consolidate Pulaski Fire Protection District #5 and Sylvan Hills Fire District #6. This Order was filed with the Pulaski County Clerk on August 9, 2005. Both of these dates are prior to Act 438 becoming law on August 12, 2005.
 Does this constitute a valid Order since County Judge "Buddy" Villines signed the order prior to Act 438 becoming law?
3. The City of Sherwood is the only locality in Arkansas where two independently operated fire protection districts formed underAct 183 of 1938 existed in the same city.
 (a) Is this type of legislation considered to be Special or Local Legislation?
 (b) Is Special or Local Legislation legal?
4. When the two fire improvement districts were formed, each district chose to organize fire protection under Act 183 of 1939. Act 183 of 1939, Section 1 states "Upon the petition of a majority in value of real property in any designated area" Act 183 of 1939, Section 14 states "The district shall not cease to exist upon completion of the improvement, but it shall continue to exist for the purpose of operating the firefighting equipment and keeping it in repair, until such a time as the owners of a majority in value of the real property within the district petition the county court for dissolution of the district."
 Do these fire departments have to be dissolved as mandated by Act 183 of 1939, Section 14? If the answer is "no," please explain by citing your legal basis.
RESPONSE
With regard to your first set of questions, I must note that I cannot resolve the question of whether a particular fire protection district was lawfully formed, as this is a matter that could only be decided by a court. I can and will state that in my opinion, Act 183 of 1939, as amended, A.C.A. §§ 14-284-101 — 121 (Repl. 1998 and Supp. 2005), is generally not authority for landowners in an incorporated town to petition for the provision of fire protection services through an improvement district embracing only lands lying within the town boundaries. According to my research, the applicable law in 1950 respecting organizing fire protection for an incorporated town was not entirely clear, but included Act 41 of 1941, codified in pertinent part at A.C.A. § 14-92-205 (Repl. 1998), and probably § 6 of Act 1 of 1875
(A.C.A. § 14-53-101 (Repl. 1998)). In response to your second question concerning the consolidation of two particular fire protection districts in 2005 in light of the effective date of Act 438 of 2005, it is possible that separate authority existed under A.C.A. § 14-284-124 for this particular consolidation. The answer to the first part of your third question is "no," in my opinion. The answer to the second part of this question is "no," as to legislation that violates the applicable test for determining whether legislation is "local or special" in the constitutional sense. In my opinion, the answer to your final question is "no." When districts consolidate under one of the provisions added toAct 183 of 1939, their assets and liabilities are consolidated and a "new district" is formed, in my opinion rendering inapplicable the requirement that a district must continue to exist until dissolution by petition of property owners.
Question 1(a) — Under [the recited] circumstances, was the organizing of fire protection for an incorporated town such as Sherwood legal?
To the extent this question is directed specifically to the validity of a particular fire protection district that was formed by order of the county court pursuant to Act 183 of 1939, see A.C.A. § 14-284-104, I must note that I am not in a position to determine the propriety of any such order. As an executive officer, I am neither authorized nor equipped to conduct the necessary factual inquiry and then to make what amounts to a judicial determination based on that inquiry. I believe a court is the proper forum to perform this function.
It also bears mentioning that Act 183 sets a thirty-day limitation as follows for challenging the formation of a district:
Any petitioner or any opponent of the petition may appeal from the judgment of the county court creating or refusing to create the district, but the appeal must be taken and perfected within thirty (30) days. If no appeal is taken within that time, the judgment creating the district shall be final and conclusive upon all persons.
A.C.A. § 14-284-104(d) (Repl. 1998) (emphasis added).
This provision plainly requires that objections to the creation of a district under Act 183 must be brought within thirty days; otherwise the district is deemed to have been validly created.
With regard, therefore, to the organization of the district you have described, the county court's judgment establishes the legality of those proceedings. I will note, moreover, that such a judgment may not be attacked after the statutory 30-day appeal period except in the limited circumstance of "fraud or demonstrable error" in the original proceedings. Maumelle Blvd. Water Sewer Dist. No. 1 v. Davis,315 Ark. 353, 357, 868 S.W.2d 73 (1993) (citing Carney v. Walbe,175 Ark. 746, 300 S.W. 413 (1927)). Additionally, as stated in Davis, supra, "after the expiration of the period for direct attack, a court can only set aside the assessment `when it appears on its face to be obviously and demonstrably erroneous.'" Id. (emphasis added, quoting Paving Dists. Nos. 2 3 v. Baker, 171 Ark. 692, 694, 286 S.W.2d 945, 946
(1926), citing Board of Improvement v. Pollard, 98 Ark. 543, 136 S.W. 957
(1911)). A court therefore will not admit testimony or evidence that did not appear on the face of the proceedings creating the district, as the basis for finding demonstrable error. See again Davis, supra. See also Portis v. Ballard, 175 Ark. 834, 1 S.W.2d 1 (1927).
Another case offers the following insight with respect to a so-called "collateral attack" on an improvement district's formation:
[T]he validity of the district cannot be challenged on account of mere errors and irregularities in the original organization. If, however, the organization is void on account of jurisdictional defects — in other words, if the lack of jurisdiction appears on the face of the proceedings — the question could be raised collaterally. . . [T]he inquiry here is whether or not there were defects in the original organization on the face of the proceedings which render the same void.
Gregg v. Road Improvement District No. 2, 169 Ark. 671, 675, 277 S.W. 515
(1925).
You have suggested that Act 183 of 1939 was improperly invoked to establish fire protection for all of the incorporated town of Sherwood in 1950 because Act 183 states that "[p]ortions of incorporated towns" may be included in such a district. (Emphasis added). The relevant provision states: "Portions of incorporated towns may be included in the districts, provided the town has no equipped fire fighting station." A.C.A. § 14-284-103(b) (Repl. 1998) (emphasis added). As I have indicated above, a determination regarding the validity of a particular improvement district's formation is not within the scope of an opinion from this office. I will state generally, however, that having reviewed Act 183, it is my conclusion that the act is not authority for a petition of landowners in an incorporated town to create a fire protection district embracing only lands lying within the town boundaries. I base this conclusion on the act's overall intent, as reflected in its title, to wit:
AN ACT to Make It Possible for Built-Up Areas Not Embraced in Any Town or City to Establish A Fire Department Upon Petition of a Majority in Value of the Owners of the Land Affected.
Acts 1939, No. 183 (Title).
Accepted rules of statutory construction provide that the title of an act, although not controlling, may serve to resolve ambiguities in the body of the act. See, e.g., Routh Wrecker Service Inc. v. Wins,312 Ark. 123, 847 S.W.2d 707 (1993). In my opinion, Act 183 is ambiguous in authorizing property owners "in any designated area" to petition for the formation of a fire protection district. The relevant provision, codified at A.C.A. § 14-284-103(a) (Repl. 1998), states:
Upon the petition of majority in value of the owners of real property in any designated area, no part of which is more than three (3) miles, except as provided in subsection (e) of this section, from a lot or plot of ground not exceeding a square acre in area on which the fire station is located or is to be located, the location of which lot or plot of ground must be definitely fixed in the petition, and which area defined in the petition contains not less than one hundred (100) residences, exclusive of garages and other buildings, it shall be the duty of the county court to lay off into an improvement district the territory described in the petition and to name five (5) commissioners of the district who are resident property holders in the district.
(Emphasis added).
There is no definition of "designated area," or any other specific statement of intent respecting what "area" or "territory" might be included. As you have noted, subsection (b) of § 14-284-103 authorizes the inclusion of "[p]ortions of incorporated towns" having no equipped fire stations. In my opinion, this suggests that the term "designated area" is generally not intended to encompass real property within an incorporated town. To the extent ambiguity remains, resort to the title is permissible; and I believe it is clear from the title that a petition of a majority of property holders in an incorporated town is not what the legislature contemplated when it enacted Act 183.
Having ventured this opinion, I will also note that I am uncertain whether an otherwise proper petition of owners of property lying outside an incorporated town might include all of the lands within a town. In my opinion, Act 183 is not as clear on that point.
I must also express my uncertainty whether the creation of a fire protection district under Act 183 embracing property only within a town constitutes the type of error or defect that would support a "collateral attack" to set aside the district after the expiration of the 30-day statutory challenge period. Such a district would be irregular, in my opinion. But according to my research, a district that was improperly formed may or may not be subject to challenge at a later date. Generally, unless its organization was deemed void, I do not believe a district could be attacked after the thirty days. See Gregg v. Road Improvement District No. 2, supra. I have found no authority, moreover, on the issue of whether a district would be void for embracing only lands lying within town boundaries. Accordingly, I cannot opine further regarding a challenge of this nature.
Question 1(b) — What Arkansas law would have been applicable in organizing fire protection for an incorporated town at this time?
According to my research, Act 41 of 1941 was the only law in effect in 1950 respecting organizing fire protection that clearly applied to incorporated towns. This act authorized the formation of suburban improvement districts for various purposes, including "establishing, equipping, and maintaining rural fire departments[.]" A.C.A. § 14-92-205(a) (Repl. 1998). The act provides that "[a]ll, or any portion, of any municipality may be included in these districts, if the portion of the area located within the municipalities shall be less than fifty percent (50%) of the area of the entire district." Id. at (b). The term "municipality" expressly includes "a city of the first class, city of the second class, or an incorporated town[.]" Id. at (a).
Reference should also be made in this regard to Act 1 of 1875, a comprehensive act governing the incorporation, organization, and government of municipal corporations. The act classified municipal corporations into "cities of the first class," "cities of the second class," and "incorporated towns." Acts 1875, No 1, § 1, codified at A.C.A. § 14-37-102 (Repl. 1998). It set population limits for cities of the first and second classes, see A.C.A. § 14-37-103(a)(1) and (2) (Repl. 1998); and it provided that "[a]ll others shall be incorporated towns and shall be governed by the provisions of this subtitle." Id. at (a)(3). The relevant provision concerning fire protection is found in § 6 of the 1875 act, codified at A.C.A. § 14-53-101 (Repl. 1998), which provides:
(a) The city council shall establish fire departments and provide them with proper engines and such other equipment as shall be necessary to extinguish fires and preserve the property of the city and of the inhabitants from conflagration.
(b) The council shall promulgate such rules and regulations to govern the department as it shall deem expedient.
(Emphasis added).
The corporate authority of incorporated towns is vested in a "town council" under Act 1 of 1875. Acts 1875, No. 1, § 41, codified at A.C.A. § 14-45-101 (Repl. 1998). The question therefore arises whether the above subsection 14-53-101 applies to incorporated towns, given its application to a "city council." I note in this regard that the Arkansas Supreme Court has extended other provisions of the 1875 act to cities of the second class and incorporated towns, notwithstanding their express application only to cities of the first class. In Conner v. Burnett,216 Ark. 559, 226 S.W.2d 984 (1950), the court held that a statute giving express authorization only to cities of the first class to pay salaries to their marshals authorizes, by implication, a city of the second class to do the same. The court noted that Act 1 of 1875, the source of the provision authorizing cities of the first class to pay marshals' salaries, was a comprehensive statute governing cities and towns, and concluded that it was appropriate to consider Act 1 as a whole, including those portions expressly applying only to cities of the first class, when determining the powers of cities of the second class. Similarly, in Weeks v. Texarkana, 50 Ark. 81, 6 S.W. 504, the court upheld a town council's payment of a salary to its recorder, reasoning that "such power may be fairly inferred as essential to the purposes of the incorporation."
Although I have found no case addressing A.C.A. § 14-53-101, it seems reasonable to surmise that the same rationale would support extending to cities of the first class and incorporated towns a city council's obligation to provide fire protection services for its inhabitants.
Question 2 — Does [the Order signed by Pulaski County Judge "Buddy" Villines on August 4, 2005, to consolidate Pulaski Fire Protection District #5 and Sylvan Hills Fire District #6, which was filed with the Pulaski County Clerk on August 9, 2005] constitute a valid Order since [Judge Villines] signed the order prior to Act 438 [of 2005] becoming law?
I must initially note, consistent with my observation under Question 1(a) above, that it is not my place to question the validity of a county court order. I will also note, as explained further herein, that there may be authority other than Act 438 to support this particular consolidation. Your question nevertheless appears to presume that the consolidation of these two fire protection districts was effected, or attempted, pursuant to Act 438 of 2005. Accordingly, some discussion of that act is warranted.
Act 438 amended A.C.A. § 14-284-124 to add the following provision authorizing the consolidation of fire protection districts in cities of the first class by a vote of the people:
In cities of the first class that have two (2) or more full-time volunteer fire protection districts, the governing body of the city may refer to the voters in the fire protection districts the option to consolidate the districts.
If a majority of the voters in each district vote in favor of consolidation, the districts shall consolidate as set forth in subsections (d) through (f) of this section.
A.C.A. § 14-284-124(b)(1) and (2) (Supp. 2005).
As you have noted, Act 438 went into effect on August 12, 2005,[1]
whereas the Order in question was entered on August 9, 2005. A well-established principle of statutory interpretation that has been consistently applied by the Arkansas Supreme Court is the principle that all legislation is presumed to apply prospectively unless the legislature expressly declares, or necessarily implies by the language used, an intent to give the legislation retroactive effect. See, e.g., City of Cave Springs v. City of Rogers, 343 Ark. 652, 37 S.W.3d 607 (2001); City of Dover v. Barton, 337 Ark. 186, 987 S.W.2d 705 (1999). Act 438 of 2005
contains no express indication that it was intended to be applied retroactively. Nor does the language necessarily imply that the act is to be given retroactive effect.
With regard, however, to the August 9, 2005, Order in question, I note that according to this Order, the particular consolidation at hand was effected by resolution of the two districts, and not by a majority of the voters as required by Act 438. Accordingly, even if Act 438 was deemed applicable, it seems that the act was not followed. This might render the Order invalid, assuming that Act 438 was the sole authority for this consolidation.
I note in this regard that prior to the enactment of Act 438, another subsection of A.C.A. § 14-284-124 authorized the consolidation of "geographically contiguous" fire protection districts as follows:
Fire protection districts organized under this subchapter may consolidate if:
(1) The districts are geographically contiguous;
(2) Located in the same county; and
(3) No parcel of land in the new district will be more than three (3) miles from an existing fire station.
A.C.A. § 14-284-124(a) (Supp. 2005) (enacted pursuant to Act 286 of 1995).
While I lack sufficient information to make a definitive determination, it appears that the consolidation in question may have been effected through this subsection. In response to your question, therefore, if the consolidation in fact met the criteria under A.C.A. § 14-284-124(a), supra, then the Order would be valid, in my opinion.
Question 3(a) — Is [Act 438 of 2005] considered to be Special or Local Legislation [since the City of Sherwood is the only locality in Arkansas where two independently operated fire protection districts formed underAct 183 of 1939 existed in the same city]?
In my opinion, the answer to this question is "no," that is,Act 438 of 2005 in my opinion does not constitute "local or special" legislation.
Such legislation is proscribed by Article 5, Section 25 and Amendment14 to the Arkansas Constitution. Article 5, § 25 provides:
In all cases where a general law can be made applicable no special law shall be enacted; nor shall the operation of any general law be suspended by the Legislature for the benefit of any particular individual, corporation or association; nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for.
Ark. Const. art. 5, § 25.
Amendment 14 provides:
The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
Ark. Const. amend. 14.[2]
The Arkansas Supreme Court has "`differentiated that `special' legislation arbitrarily separates some person, place, or thing while `local' legislation arbitrarily applies to one geographic division of the state to the exclusion of the rest of the state.'" Wilson v. Weiss,368 Ark. 300, 307, ___ S.W.3d ___ (2006) ("Wilson I") rev'd on direct appeal and aff'd on cross-appeal, Wilson v. Weiss, No. 07-204 (June 7, 2007) (quoting McCutchen v. Huckabee, 328 Ark. 202, 208, 943 S.W.2d 225
(1997)). The court has further explained:
Merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation. Boyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237 (1998); Littleton v. Blanton, 281 Ark. 665 S.W.2d 239 (1984). Instead, we have consistently held that an act of the General Assembly (or, as here, an administrative agency) that applies to only a portion of the state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. McCutchen v. Huckabee,328 Ark. 202, 943 S.W.2d 225 (1997). Although a law may be limited in effect only to a few classifications, it is not necessarily special or local legislation if the classification is not arbitrary and bears a reasonable relation to the purpose of the law. Foster v. Jefferson County Bd. of Election Comm'rs, 328 Ark. 223. 944 S.W.2d 93 (1997).
Arkansas Health Services Agency v. Regional Care Facilities, Inc.,351 Ark. 331, 339, 93 S.W.3d 672 (2002). See also Wilson I, supra,328 Ark. at 307-08.
In elaborating on this "rational basis" test of legislation challenged as being special or local, the court in Arkansas Health Services Agency observed:
Further, it is not the court's role to discover the actual basis for the legislation; rather, our role is merely to consider if any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose.
Id.
It is the challenger's burden to prove that the act is not rationally related to a legitimate governmental purpose. See Wilson I, citing City of Siloam Springs v. Benton County, 350 Ark. 152, 85 S.W.3d 504 (2002). Additionally, in making this determination, the court may look outside the act and consider any fact of which judicial notice may be taken. See Wilson I and McCutchen, supra.
Applying the foregoing, I find nothing arbitrary or unreasonable about the legislature's authorizing the governing bodies of cities of the first class to refer to the voters the option of consolidating fire protection districts covering such cities. In my opinion, the population of first class cities rationally distinguishes them for this purpose, given that the separate consolidation authority granted by subsection14-284-124(a), supra, is more likely to encompass smaller incorporated areas served by fire protection districts.
I note further that even assuming Act 438 of 2005 affected only the City of Sherwood, it is well established that legislation applying only to one city or county will not be stricken if it is rationally based and prospective inasmuch as other cities or counties might fall within the scope of the legislation at some point in the future. See Arkansas Health Services Commission, supra at 344-45.
Question 3(b)-Is Special or Local Legislation legal?
No, as to legislation that violates the applicable test for determining whether legislation is "local or special" in the constitutional sense. See discussion above.
Question 4 — Do these fire departments [that were formed underAct 183 of 1939] have to be dissolved as mandated by Act 183 of 1939, Section 14?
In setting out this question, you have correctly noted that Act 183 expressly provides that a fire protection district will continue in existence until a petition for dissolution is granted by the county court. See A.C.A. § 14-284-118(a) (Repl. 1998) (providing that "[t]he district shall not cease to exist upon the completion of the improvement, but it shall continue to exist for the purpose of operating the fire fighting equipment and keeping it in repair until such time as the owners of a majority in value of the real property within the district petition the county court for dissolution of the district.") However, as explained above in response to your second question, Act 183 was amended to provide for the consolidation of certain districts organized pursuant to the act. A.C.A. § 14-284-124(a) (and (b) (Supp. 2005) (enacted, respectively, under Act 286 of 1995 and Act 438 of 2005). The effect of a consolidation under either one of these provisions is addressed by subsections 14-284-124 (c) through (e) as follows:
(c)(1)(A) Any fire protection district which is formed by the consolidation of two (2) or more fire protection districts shall consolidate all assets held by it arising from any of the districts and shall also assume all liabilities of the districts.
(B) The assets may be used by the district for any purpose allowed by law, and the liabilities of the district may be paid with funds arising from any source.
(2) All the provisions, rights, securities, pledges, covenants, and limitations contained in the instrument creating a liability shall not be affected by the consolidation, but shall apply with the same force and effect as provided in the original creation of liability.
(d)(1) The existing assessments of each district consolidated into the new district shall remain in force until the end of the year in which the districts are consolidated.
(2) The commissioners shall order the assessors to reassess the annual benefits of the new district for the following year.
(e)(1) A consolidated fire protection district shall not have notes outstanding at any one (1) time in excess of one hundred thousand dollars ($100,000).
(2) The limitation of the excess outstanding note balance under subdivision (d)(1) of this section shall not apply to a consolidation of fire protection districts in a city of the first class that has two (2) or more full-time volunteer fire protection districts that have received funding from the city.
A.C.A. § 14-284-124 (c) — (e) (Supp. 2005) (emphasis added).
When districts consolidate, therefore, their assets and liabilities are consolidated and a "new district" is formed. In my opinion, this renders inapplicable the requirement that a district must continue to exist until dissolution by petition of property owners. Although amendments by implication are not favored in construing statutes, see Cummings v. Washington County Election Com'n, 291 Ark. 354, 724 S.W.2d 486 (1987), previous statutes may be amended by implication necessarily resulting from subsequent legislation, where "the terms of the subsequent act are so inconsistent with the provisions of the prior law that they cannot stand together." Arnold v. City of Jonesboro, 227 Ark. 832, 834, 302 S.W.2d 91
(1957). In my opinion, the provisions of A.C.A. § 14-284-118, requiring the continued existence of a district for purposes of operating and repairing the equipment until dissolution, cannot be reconciled with the terms of A.C.A. § 14-284-124, authorizing the consolidation of districts. Accordingly, I believe the former statute was impliedly amended by the latter.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] See Op. Att'y Gen. 2005-110 (noting the August 12, 2005, effective date of acts passed during the Eighty-Fifth regular session with no emergency clause or specified effective date).
[2] My predecessor observed the following regarding these two constitutional provisions:Although the Publisher's Notes to both Article 5, § 25 and Amendment 14 provide that the latter constitutional provision may supersede the former, the Arkansas Supreme Court has applied Article 5, § 25 since the adoption of Amendment 14 in 1926. See, e.g., Haase v. Starnes, M.D., 323 Ark. 263, 274, 915 S.W.2d 675 (1996) (entertaining an Article 5, § 25 challenge in a case that did not rely on Amendment 14). In Laman, Mayor v. Harrill, 233 Ark. 967, 969-70, 349 S.W.2d 814 (1961), the court discussed as follows the interplay between these two constitutional provisions:Section 25 . . . left it largely a matter of legislative determination as to the applicability of special and general laws and much legislation which was special or local was passed from time to time.The dissatisfaction of the people with that practice crystallized in the adoption of Amendment 14 to the Constitution. Op. Att'y Gen.2005-065.